**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 21-124-DLB-EBA**

**ERIC C. DETERS**                                                                                              **PLAINTIFF**

**v.**                           **MEMORANDUM OPINION AND ORDER**

**FACEBOOK, INC., et al.**                                                                              **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on Defendants' Motion to Dismiss, or in the alternative, Motion to Transfer. (Doc. # 13). The matter has been fully briefed and is thus ripe for this Court's review. (Docs. # 16 and 18). For the reasons stated herein, Defendants' Motion to Dismiss is **granted**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On September 10, 2021, Plaintiff Eric Deters filed suit against Defendants Facebook, Inc. and Facebook Payments, Inc. ("Facebook") based on a "personal observation on behalf of the Plaintiff for a significant amount of time." (Doc. # 1-1 at 1). Plaintiff alleges that Facebook was "manipulating data and using algorithms to fraudulently induce Facebook users to continue to utilize its services, as well as, invest income to boost posts." (*Id.* at 2). More specifically, Plaintiff claims that Facebook engages in "unlawful censorship activities," including suspending his account for a week for "inciting violence" by "stating Deters Law was 'kicking ass.'" (*Id.* ¶ 22). Plaintiff also alleges a number of claims related to his use of Facebook's platform: (1) a detrimental reliance claim premised on his inability to use Facebook's advertising service when he

1

was in "Facebook jail" (*id.* ¶¶ 27-37), (2) a negligence claim (*id.* ¶¶ 39-42), (3) a gross negligence claim (*id.* ¶¶ 43-47), (4) a fraud claim premised on "material, false representations" that Facebook allegedly made to Deters regarding its algorithms, manipulation of data, views, and users (*id.* ¶¶ 48-56), (5) a claim for violation of the Kentucky Consumer Protection Act based on allegedly unconscionable acts by Facebook (*id.* ¶¶ 57-66), and (6) a claim for declaratory and injunctive relief (*id.* ¶¶ 95-97).[1]

More generally, the Complaint seems to be focused on amplifying the narrative that Facebook attempts to suppress speech on its platform that "go[es] against establishment narratives" and specifically targets conservatives and Trump supporters. (*Id.* ¶ 22). Deters opines that "Facebook's so called 'community standards' are NOT community standards. They are WOKE, liberal progressive standards that are NOT consistent with the Cincinnati/Northern Kentucky tristate community." (*Id.* ¶ 37).

Following the filing of this action, Defendants removed the case from Kenton Circuit Court to this Court in the Eastern District of Kentucky on the basis of diversity jurisdiction. (Doc. # 1). Thereafter, Defendants filed a Motion to Dismiss which is the subject of this Order. (Doc. # 13).

## II.   ANALYSIS

### A.   Standard of Review

When a defendant brings a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing the existence of jurisdiction." *Air Prods. Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544,

---

[1] While not explicitly listed in this summary, Plaintiff also alleges negligence, gross negligence, fraud, and Kentucky Consumer Protection Act claims against Defendant Facebook Payments, Inc. (Doc. # 1-1 ¶¶ 67-94).

2

549 (6th Cir. 2007). The plaintiff is only required to make "a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). To meet this burden, plaintiff cannot "simply point[] to the pleadings, 'but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Hall v. Rag-O-Rama, LLC*, 359 F.Supp.3d 499, 504 (E.D. Ky. 2019) (quoting *Theunissen*, 935 F.2d at 1458).

In actions stemming from diversity jurisdiction, "federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements." *Air Prods. Controls*, 503 F.3d at 550; *see Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (holding that a federal court is only able to exercise personal jurisdiction over an out-of-state defendant if the state court in the forum state could do so).

### B.     Personal Jurisdiction in Kentucky

Whether a court may exercise personal jurisdiction under Kentucky law is a two-step process. *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015) (citing *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011)). First, the court must determine whether the "cause of action arises from the type of conduct or activity that is enumerated in the [Kentucky long-arm] statute." *Id.* Second, if the long-arm statute does cover the conduct at issue, "the court must assess whether 'exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.'" *Id.* (quoting *Caesars Riverboat Casino*, 336 S.W.3d at 57).

The Kentucky long-arm statute covers nine different types of conduct. Ky. Rev. Stat. § 454.210. Deters argues three subsections of Ky. Rev. Stat. § 454.210 are

3

applicable to the current dispute. (Doc. # 16 at 4-6). First, that "Defendants have undeniably caused tortious injury in the Commonwealth by virtue of their acts and omissions." (*Id.* at 4). Second, that Defendants caused tortious injury by acts and omissions that "constituted a persistent course of conduct and resulted in the derivation of substantial revenue within the Commonwealth." (*Id.* at 5). Alternatively, Deters argues that Defendants are subject to the long-arm statute by virtue of contracting to supply services in Kentucky. (*Id.* at 6). The implicated subsections state in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's: . . . 2. Contracting to supply services or goods in this Commonwealth; 3. Causing tortious injury by an act or omission in this Commonwealth; 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct . . . provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

Ky. Rev. Stat. §§ 454.210(2)(a)(2)-(4).

To arise from conduct listed in the long-arm statute, "the alleged wrongful acts of the defendant laid out in plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction." *Caesars Riverboat Casino*, 336 S.W.3d at 58-59. This means that there must be a "reasonable and direct nexus" between the defendant's activities in Kentucky and the wrongful conduct alleged in the Plaintiff's Complaint. *Id.* at 59.

Plaintiff's allegations necessarily fall into two categories that would allow for this Court to exercise jurisdiction under the Kentucky long arms statute—alleging Defendant (1) caused tortious injury or (2) contracted to supply services in the Commonwealth.

4

Under Ky. Rev. Stat. 454.210(2)(a)(3), tortious injury must occur within the Commonwealth. Kentucky law has specifically "emphasized the distinction between tortious actions and tortious consequences, and [has] held that it is the former that must occur within the Commonwealth to satisfy KRS 454.210(2)(a)(3)." *Blessing v. Chandrasekhar*, No. 2:20-CV-16, 2020 WL 3477021, at *2 (E.D. Ky. June 25, 2020), *affirmed by Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021). Deters repeatedly references "the communications in question" in his Response opposing summary judgment, but has failed to explain what exact communications are at issue. (*See generally* Doc. # 16). Even if Deters had properly alleged that Facebook sent a tortious communication into the state, Facebook's communication alone would not be enough to establish personal jurisdiction—"[s]ince the Kentucky Supreme Court's decision in *Caesars Riverboat Casino, LLC v. Beach*, several cases have rejected the argument that an out-of-state defendant commits an act or omission in this Commonwealth by sending a tortious communication into Kentucky." *Mgmt. Registry, Inc. v. Cloud Consulting Partners, Inc.*, No. 3:19-CV-340, 2019 WL 4478860, at *4 (W.D. Ky. Sept. 18, 2019) (collecting cases) (internal quotations omitted).

Likewise, if tortious injury is caused by an act made outside the Commonwealth, the defendant must be engaged in a "persistent course of conduct in Kentucky such that personal jurisdiction is proper under § 454.210(2)(a)(4)." *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12, 2021 WL 4487609, at *8 (W.D. Ky. Sept. 30, 2021). Again, "courts applying Kentucky's long-arm statute have been 'unpersuaded by the fact that Defendant may have communicated with the Plaintiff through letters, telephone calls, e-mails or facsimiles directed at Kentucky.'" *Id.* (quoting *Spectrum Scan, LLC v. AGM California*, 519

5

F.Supp.2d 655, 658 (W.D. Ky. Oct. 19, 2007)). Because of this, Facebook's alleged wrongful communication with Deters does not satisfy his burden of illustrating personal jurisdiction.

Similarly, the Court can find no direct nexus between Facebook's acts or omissions inside or outside the state of Kentucky between its communications with Deters and the alleged wrongful conduct, and therefore also fails to satisfy the "arising under" prong of the long-arm statute. Plaintiff has failed to plead what exact tortious injury Facebook allegedly caused or how its communications with Deters gave rise to this injury. Even if Plaintiff did plead a sufficient nexus between Facebook's acts or omissions and the alleged wrongful conduct, that alone would not allow the Court to exercise personal jurisdiction over Facebook. As noted above, Plaintiff cannot "simply point[] to the pleadings, 'but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Hall, LLC*, 359 F.Supp.3d at 504 (quoting *Theunissen*, 935 F.2d at 1458). Plaintiff has not even pointed to his pleadings to explain a "reasonable and direct nexus" and he certainly has not set forth specific facts to prove that this Court may exercise jurisdiction. *Caesars Riverboat Casino*, 336 S.W.3d at 59.

Unfortunately for Plaintiff, his second argument in favor of personal jurisdiction because Facebook "contracted" to supply services in Kentucky, suffers the same fate. Deters has not adequately pled that he entered into a contract with Facebook, or because of that contract, Facebook provided services to him in Kentucky, or that Facebook's contract with another entity caused him injury.

The focus of this inquiry is not based on where the harm is suffered, but instead on "the relationship among the defendant, the forum, and the litigation." *H.E.B., LLC v.*

6

*Jackson Walker, LLP*, 587 S.W.3d 333, 339 (Ky. Ct. App. 2019). In order for personal jurisdiction to attach when a defendant provides a service, a contract must "provide for the supplying of services . . . to be transported into, consumed, or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011). Again, Deters does not allege there was any contract between himself and Facebook or Facebook and another entity to provide services in Kentucky. In fact, the word contract does not even appear in his Complaint. (*See generally* Doc. # 1-1). Likewise, Deters has failed to allege that Facebook provided a specific service to him *in Kentucky*. In the context of personal jurisdiction and services, Deters is required to "explain how the [contract] here supplied services 'to be transported into, consumed or used in Kentucky.'" *Induction Therapies, LLC v. Ingenes, LLC*, No. 3:20-CV-382, 2021 WL 1535374, at *2 (W.D. Ky. March 9, 2021) (quoting *Hinners*, 336 S.W.3d at 896). Deters only makes a vague reference to *Commonwealth Trust Bancorp, Inc. v. Community Trust Financial Corp.*, which held that defendants who "contracted with Kentucky residents to provide online banking services through 'Online Services Agreements,'" were subject to personal jurisdiction under Ky. Rev. Stat. § 454.210(2)(a)(2). No. 7:10-CV-62, 2011 WL 2020246, at *3 (E.D. Ky. May 24, 2011); (Doc. # 16 at 6). But, as explained in *Induction Therapies*, *Commonwealth Trust Bancorp* can be distinguished when a defendant does not "explain how the [contract] here supplied services 'to be transported into, consumed or used in Kentucky.'" 2021 WL 1535374, at *2 (quoting *Hinners*, 336 S.W.3d at 896). Therefore, Deters has failed to establish that Ky. Rev. Stat. § 454.210(2)(a)(2) provides this Court with a basis to exercise personal jurisdiction.

7

### III.   CONCLUSION

Not only has Plaintiff failed to make a *prima facie* showing of personal jurisdiction, he has failed to even properly allege that this Court may exercise personal jurisdiction over Facebook under the Kentucky long arm statute.  Accordingly,

**IT IS ORDERED** that:

(1)    Defendants' Motion to Dismiss (Doc. # 13) is **GRANTED**;

(2)    Plaintiff's Complaint (Doc. # 1-1) is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(3)    An accompanying Judgment shall be entered contemporaneously herewith.

This 25th day of April, 2022.

Signed By:
*David L. Bunning*  *DB*
United States District Judge

M:\DATA\ORDERS\Cov2021\21-124 MOO.docx